**IN THE COURT OF APPEALS OF IOWA**

No. 16-1795
Filed January 24, 2018

**ZACHARY SHORT,**
　　　Plaintiff-Appellee,

**vs.**

**ELLIOTT EQUIPMENT COMPANY,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Bradley McCall, Judge.

The employer appeals from the district court's ruling awarding a former employee unpaid commission and attorney fees. **AFFIRMED AND REMANDED.**

James W. Carney of Carney & Appleby P.L.C., Des Moines, and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

Kristina M. Stanger and Mitchell R. Kunert of Nyemaster Goode, P.C., Des Moines, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, Judge.**

Zachary Short sued his former employer, Elliott Equipment Company, under the Iowa Wage Payment Collection Law, found in Iowa Code chapter 91A (2015). Following a bench trial, the district court awarded Short $4660.22 in unpaid commission and $44,397.75 in attorney fees. Elliott Equipment appeals from the district court's decision, claiming the district court erred in its determination that Short was entitled to commission and that it abused its discretion in awarding the amount of attorney fees after finding they were the "usual and necessary attorney's fees in recovering unpaid wages and expenses." *See* Iowa Code § 91A.8.

**I. Background Facts and Proceedings.**

Short was an at-will employee of Elliott Equipment from April 2012 until March 2014, when he voluntarily terminated his employment with the company. Short was hired to sell garbage trucks—both to private entities and municipalities. Elliott Equipment paid Short an annual base salary of $35,000 plus a $15,000 draw against commission for the first year. According to the "Commission Policy and Territory Agreement" he signed, the company's policy was that "[a]ll commissionable new equipment sales with profit levels up to 25% will be paid a commission of 1% of the new equipment sales price not including the new chassis portion of the sale if applicable."

Short was specifically assigned to Missouri as his sales territory. During his time with the company, he pursued the City of Columbia as a target customer. Elliott Equipment had sold the municipality one truck approximately two years before Short began his employment, but it did not have an ongoing relationship or contract with the city.

During the fall and winter of 2013, the City of Columbia purchased nine garbage trucks from Elliott Equipment. Short was the employee who submitted bids to the city and who ordered the trucks from the manufacturers. None of the nine trucks had been delivered to the city by the time Short left the company's employment.

In May, DaLena Elliott—the wife of the owner of the company, Gene Elliott, and the person who was in charge of payroll at the time—sent an email to Gene and Rick Vanwassenhove, the company's vice president and the person in charge of signing off on all commissions, asking, "So was the final decision to pay [Short] for 50% commission on ALL Cit[y] of Columbia sales? Looks like they're starting to come through in May." Vanwassenhove responded, "I would wait and see how much his mistakes end up costing us after all is said and done before paying if up to me," and Gene responded that he agreed with Vanwassenhove.

The salesperson who replaced Short, Patrick Wisor, delivered the trucks to the City of Columbia as they were ready, throughout the summer of 2014. A number of trucks had issues—either at the fault of the manufacturer or Short—and Wisor spent a large amount of time correcting those issues so the city would ultimately accept the trucks and issue final payment on them.

In June, DaLena emailed Vanwassenhove asking "what [he] would like to pay out to Patrick Wisor on the prior sales he's assisted with that were Zac Short's and also what [he] would like [her] to extend to Zac for those sales prior to his depart[ure]." Vanwassenhove responded, telling her to pay Wisor for half of the normal commission Short would have received. He also indicated, "I am finding

things out about [Short] since he left that are of low honor and integrity. I would not pay him another dollar at this point."

Based on the company's own calculation, 1% of profits on the trucks amounted to $8331.71. Of that commission, Wisor was paid $3576.95. No action was taken with the remaining $4754.76.

In July, Short emailed Vanwassenhove asking "how things were coming with the trucks[ he] sold to Columbia." The email also stated, "I was expecting to have received some commission from something by now. Let me know." Three days later, Vanwassenhove responded to the email, stating, "We will not be paying commission for the items which you started the sales process on but did not finish all the way through the completion and equipment delivery stage."

A number of emails were exchanged between Short and various personnel at Elliott Equipment.

In an August 18 email, Gene informed Short he did not "think [Short was] owed one cent from Elliott Equipment Company." The email included several reasons the company would not be paying Short, including that "[p]art of the sales process is to follow through with everything that has to do with the sale" and salesmen "are not paid a commission until all those things are done"; that he "failed to turn in the bid [to the City of St. Louis] or turned it in late"; and that he was "trying to sell [a private hauler] a piece of equipment that was coming from somewhere other than Elliott Equipment Company."

Vanwassenhove and DeLena were also included on the email. Within a few minutes of the email being sent to Short, Vanwassenhove responded to Gene and DaLena with the following:

It is really a simple thing if anyone else ever asks if they will get commission for items sold while they were our salesman of record . . . If you sell it, it gets delivered and we get paid before the salesman quits then the salesman should be paid commission for it. Sound correct?

(Ellipsis in original.)

DaLena responded to Vanwassenhove's email, stating:

Sounds good to me. Also, I think that is only fair to those stepping into these deals and having to help finalize or deliver them. If the money was that important to [Short], then he should have been more dedicated to EEC to finish his "relationship" with these customers to the final payment was made. We can't start rewarding employees for leaving us and in my opinion that is what he is essentially asking us to do.

Short filed his petition at law in July 2015, maintaining Elliott Equipment owed him unpaid commissions. In response, Elliott Equipment denied Short had earned any part of the commission and filed a counterclaim alleging Short had breached an oral contract as part of him employment obligations by failing to timely submit bids to the City of St. Louis, which had resulted in damages to the company of approximately $60,000.

Approximately one month later, the company sent each of its salespersons an "addendum to all salesmen sales contracts and territory agreements." The addendum provided, for the first time, a written statement that salespersons would only be paid commission if the person "completely performed the entire 'sales process' before your employment at EEC ended." Additionally, "sales process" was defined in writing for the first time, stating:

The "sales process"' includes doing all of the following tasks: filled out quote or bid, received the order or PO, ordered the equipment to the specification, coordinated with the chassis dealer the delivery to our manufacturer, answered any questions our manufacturer has, received the equipment from the manufacturer,

check that the equipment met all specifications, made any adjustments to the equipment that needed to be done, coordinated delivery to the customer, delivered and trained the customer, any trade-ins are delivered to Elliott Equipment's location, make sure the trade-in is in "same condition" as traded for and payment has been received and paid In full.

In March 2016, Elliott Equipment filed a separate lawsuit against Short alleging the same breach of contract and damages.[1]

Just before trial, the parties waived a jury; Short's suit and Elliott Equipment's counterclaim proceeded to a bench trial July 2016. At trial, Elliott Equipment offered a number of theories to support its contention Short had not earned any commission in relation to the sale of the nine garbage trucks.

The company maintained Short had not earned any commission on the nine garbage trucks because he had not completed the "sales process." At trial, each employee-witness of Elliott Equipment, including the owner, Gene Elliott, testified the company had never paid a salesperson a commission for "just taking an order," as the company maintained Short had done. The company offered testimony of several employees as well as Gene's and Vanwassenhove's as to what was required to earn commission. Each listed the items included in the addendum to the sales contracts, though all admitted that document was not created until after the lawsuit was initiated. Additionally, Gene testified he had paid another salesperson some partial commissions on sales he had started but not completed before he left.

---

[1] At the trial for these proceedings, Gene was asked if the second lawsuit was "the very same breach of contract claim for which we're here today?" and he agreed it was.

The company also maintained that if Short had earned any commission, it was to be offset by the additional expenses incurred by the company after the trucks were ordered to fix the problems with the trucks. Various employees testified the company incurred $13,000 in expenses, though later examination of the claimed expenses showed approximately $1000 of those expenses were actually paid by outside manufacturers and another approximately $2500 was the amount "charged" by Elliott Equipment for extra trips to Columbia by their in-house mechanics who were not reimbursed above their normal salary for the trips. The amount of the additional expenses incurred by Elliott Equipment on the sale of the nine garbage trucks was $9453.98.[2]

Still the company maintained that even if Short had earned the full amount of commission on the trucks, it would be more than offset by the extra fees. However, a number of employees testified they had never heard of the company using expenses to completely offset a commission. Instead, the company usually subtracted the additional amount of fees from the profit and then the salesperson received 1% of the reduced profit as their commission.[3]

After a short recess following both parties' presentation of evidence, the trial court ruled from the bench. The court determined that Short had earned a partial commission, noting he had "cultivated a relationship with the City of Columbia," "prepared the bid, he submitted the bid, and achieved the initial sale of those

---

[2] No one has appealed this finding by the district court, and substantial evidence supports it.

[3] In other words, in the typical situation, if a salesperson cost the company $5000 in profit, the salesperson would not get the commission on that $5000, so their commission would be reduced by 1% of $5000, or $50.

trucks." He also "continued to do many of those tasks [outlined as the 'sales process'] after the bid was accepted by the City of Columbia." The court awarded Short $4660.22 in unpaid commission.[4]

The court concluded Elliott Equipment's counterclaim against Short failed for a number of reasons: there was no evidence to support the assertion Short breached any type of agreement by failing to hand deliver a bid to the City of St. Louis; there was no evidence to establish why the bid—which had been mailed using UPS—did not timely arrive in St. Louis; Elliott Equipment had failed to establish that if the bid had been timely submitted, they would have won the sale of their garbage trucks; Iowa law does not provide for a cause of action of employers against their at-will employees for an alleged failure to perform their duties and responsibilities; and, assuming there was a contract between Short and Elliott Equipment for delivery of bids, the Statute of Frauds prevented enforcement of any such oral contract. The counterclaim was dismissed.[5]

Short noted the Iowa Wage Payment Collection Law provides for the successful employee to be awarded "court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses," and the court instructed him to submit an application for attorney fees.

Short filed an application for fees requesting $50,347.00. In the application, he noted that this was a voluntary reduction in fees from $64,299.50. Elliott

---

[4] The court used the amount Elliott Equipment had determined was 1% of the profit, $8331.71, and subtracted the amount already paid to Wisor, $3576.95, and 1% of the amount of extra expenses incurred by Elliott Equipment, $94.54, to reach the total.
[5] After the conclusion of the present suit, Elliott Equipment voluntarily dismissed the second lawsuit, stating the "claim ha[d] been resolved in underlying litigation."

Equipment resisted the application, but the court ordered the award of the requested amount.

Elliott Equipment filed a motion to reconsider the order on fees, and a hearing was held on the matter. Following the hearing, the court reduced the award by $5949.25, the amount billed by two more experienced attorneys who had been providing oversight and training to the attorney trying Short's case. The court ordered Elliott Equipment to pay Short $44,397.75 in attorney fees.

Elliott Equipment appeals.

## II. Standard of Review.

Where, as here, a matter was tried to the district court at law, we review for correction of errors at law. *See Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999).

We review the district court's award of attorney fees for an abuse of discretion. *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning and Refrigerations, Inc.*, 691 N.W.2d 730, 732 (Iowa 2005).

## III. Discussion.

### A. Commission.

Short brought his claim under Iowa Code section 91A.8, which allows an employee to receive "liquidated damages" if the "employer has intentionally failed to pay an employee wages." Here, the district court determined there was "a good-faith dispute as to the amount of commission owed to Mr. Short in connection with the sale," so Short "may not recover liquidated damages." Short has not disputed the court's ruling. Thus, the question is whether the court erred in its determination Short earned a partial commission for his role in the sale of the garbage trucks.

Elliott Equipment maintains the court erred, claiming as the employer, it was allowed to put conditions on the commission by an employment agreement. *See Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997) (concluding the employer was not liable to the employee for nonpayment because the employee was on probation at the time for which the bonus or "gainsharing" was claimed, and the employer's handbook established that employees on probation were not eligible for the wage); *Blanton v. Robert Half Inter., Inc.*, No. 01-1468, 2002 WL 31425223, at *2 (Iowa Ct. App. Oct. 30, 2002) (agreeing with the district court "that an employer can put 'conditions' on a bonus or commission by an employment agreement"). While we agree an employer is allowed to put conditions precedent on the earning of commissions, the question here is whether Elliott Equipment had a practice of actually doing so.

Although Elliott Equipment maintained that it was its policy that a salesperson complete the entire "sales process" before paying a commission, the facts belie its assertion. Elliott Equipment did not have a written policy about when a commission was earned or what the "sales process" entailed until after this dispute arose. Additionally, Gene admitted he paid another salesman partial commissions even though that salesman did not complete the entire process. Emails between Gene, DaLena, and Vanwassenhove establish that Elliott Equipment contemplated paying Short at least a partial commission in May 2014— a time when it already was clear Short had left without finishing the "sales process." Plus, even if we were to accept Elliott Equipment's claim that the rule about completing the process was always in place—though less formally—that policy does not allow for the consideration of outside facts about the employee, such as

"integrity" or "low honor." In an email to DaLena, Vanwassenhove clearly stated that at least part of his reason for not approving a commission to Short was his reliance on those outside factors.

For all of these reasons, we cannot say the district court erred in its determination that Short earned a partial commission for his role in selling the nine garbage trucks. As no party has appealed how the amount of commission was determined and the district court's ruling on the matter is supported by substantial evidence, we affirm the district court's award of unpaid commissions in the amount of $4660.22 to Short.

**B. Attorney Fees.**

Elliott Equipment challenges the amount of the award of attorney fees to Short. The company argues the award was excessive, claiming the amount violates the "usual and necessary" fees standard. *See* Iowa Code § 91A.8. In reviewing the company's claims, we are guided by several general principles. First, "[w]hen an employee prevails on a wage claim under Iowa Code chapter 91A, the district court is required to assess attorney fees and costs against the employer." *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000). Second, the district court has been vested with "broad discretion" in the assessment of attorney fees, and "the trial judge had presumed expertise" on that question. *Id.* at 342, 343. And finally, the statute providing for attorney fees to a successful employee is remedial in nature and written with the purpose of reimbursing an employee who had to incur expenses in order to receive back wages—whether or not the employer intentionally withheld the wages. *Id.* at 343.

In determining whether an award of attorney fees is appropriate under section 91A.8, our supreme court has considered the following:

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar services.

*Id.* (citation omitted).

Here, the district court was provided an itemized accounting of the requested attorney fees. According to Short's attorneys, the original fee calculation was $64,299.50 and was "voluntarily reduced" to $50,347. The district court further reduced the fees by $5949.25, which was the amount billed for the time of attorneys who were providing oversight to the young attorney trying the case, ultimately awarding Short $44,397.75 in fees.

Elliott Equipment does not complain about the hourly rate charged by the plaintiff's attorneys in this case, nor does it identify any entries claimed to be duplicative or excessive. It does complain about the number of hours spent on the case by Short's attorneys,[6] arguing the motion practice was overly extensive. Elliott Equipment was the party who filed the motion attempting to move the cases to small claims court while seeking an award of $60,000 in its counterclaim; it was not successful. Conversely, Short was largely successful in the motions he filed; the court granted his motion to proceed under expedited rules (a motion resisted by Elliott Equipment) and his motion to strike the company's late designated expert. Short also filed a number of motions in limine—which the company

---

[6] The record reflects fees for Elliott Equipment's three attorneys were more than $35,000.

resisted—that ultimately became moot when the parties agreed to a bench trial. Short was unsuccessful in his motion for summary judgment, but according to Short's attorneys' original fee affidavit, the fees incurred preparing for and attending that hearing were voluntarily removed from the calculation of fees.

Elliott Equipment attempts to minimize its role in the protracted litigation by pointing out the fact that it offered to settle the claim; the company offered Short $1000 for a release from the lawsuit but never adjusted its offer or negotiated further. Elliott Equipment also maintains the fee award is excessive based on its size relative to the size of the unpaid wage. "But a court which places undue emphasis on the size of the judgment, to the exclusion of all other pertinent factors, thereby disregards the public interest underlying this remedial statute." *Id.* at 344. Although Elliott Equipment implies the case did not demand the hours spent by Short's attorney based on the size of the award at issue, the company characterizes this case as "a bona fide dispute over whether the employee fulfilled the job duties required to earn the commission, and whether a commission was earned at all."

While Elliott Equipment appears to take umbrage with the vigorous manner this case was tried, as our supreme court has stated, "The risk of stonewalling an employee's claim for unpaid wages fairly rests on the party best equipped to financially bear it—*the employer*." *Id.* Having reviewed the record and finding no abuse of the district court's "broad discretion" in determining the amount of "usual and necessary" fees, we affirm the district court's award of fees to Short.

**C. Appellate Attorney Fees.**

Because section 91A.8 allows for the employee's recovery of "any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary," Short is entitled to a further award of the "usual and necessary" attorney fees and costs expended in defending this appeal." *See Runyon v. Kubota Tractor Corp.,* 653 N.W.2d 582, 588 (Iowa 2002); *Salter v. Freight Sales Co.*, 357 N.W.2d 38, 43 (Iowa Ct. App. 1984); *see also Gabelman*, 606 N.W.2d at 342 (stating the court is required to assess attorney fees under chapter 91A when the employee prevails).

Because we have no record of those fees before us, we remand the case to the trial court for the limited purpose of determining the "usual and necessary" fees incurred in this appeal. *See Salter*, 357 N.W.2d at 43.

**IV. Conclusion.**

Having found no error in the district court's determination that Short earned a partial commission for his role in the sale of the garbage trucks and finding no abuse of discretion in the award of attorney fees, we affirm the district court's award of the commission and trial attorney fees. We remand the case for the limited purpose of determining the "usual and necessary" fees incurred in defending this appeal.

**AFFIRMED AND REMANDED.**